# EXHIBIT "A"

RECEIVED

NOV 0 7 2019

NED Legal

Denise M. DePekary, Esq., NJ Attorney ID No. 041541993
WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP
1 Crossroads Drive, Suite 102A
Bedminster, NJ 07921
(973) 242-1364
*Attorneys for Plaintiff, National Specialty Insurance Company*

| | |
|---|---|
| NATIONAL SPECIALTY INSURANCE COMPANY, | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: CAPE MAY COUNTY**<br>**Docket No.: CPM-L-000440-19** |
| Plaintiff, | |
| vs. | Civil Action |
| NEW JERSEY AMERICAN WATER COMPANY, INC., F.W. SHAWL & SONS, INC., | **SUMMONS** |
| Defendants. | |

FROM THE STATE OF NEW JERSEY, To The Defendant(s) Named Above:

### NEW JERSEY AMERICAN WATER COMPANY, INC.

The plaintiff, United Specialty Insurance Company, named above, has filed a lawsuit against you in the Superior Court of New Jersey, Monmouth County. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.)

If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an Attorney, you may call the Legal Services office in the county where you live or the Legal Services of NJ Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office and online at the following address:
http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf

DATED: November 5, 2019

/s/ **Michelle M. Smith**
Michele M. Smith
Clerk of the Superior Court

Name of Defendant to Be Served:      **NEW JERSEY AMERICAN WATER COMPANY, INC.**
Address of Defendant to Be Served:   1025 Laurel Oak Road
                                     Voorhees, New Jersey

Denise M. DePekary, Esq., NJ Attorney ID No. 041541993
WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP
1 Crossroads Drive, Suite 102A
Bedminster, NJ 07921
(973) 242-1364
*Attorneys for Plaintiff, National Specialty Insurance Company*

| | |
|---|---|
| NATIONAL SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>NEW JERSEY AMERICAN WATER COMPANY, INC., F.W. SHAWL & SONS, INC.,<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CAPE MAY COUNTY<br>Docket No.:**<br><br>Civil Action<br><br>**DECLARATORY ACTION<br>COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff, National Specialty Insurance Company ("NSIC"), brings this Declaratory

Judgment Action, pursuant to the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50, et seq.

and per R. 4:42-3, against Defendants, New Jersey American Water Company, Inc. ("NJAW")

and F.W. Shawl & Sons, Inc. ("Shawl") and alleges as follows:

## THE PARTIES

1.     Plaintiff, NSIC, is a Texas Corporation with its principal place of business at 1900

L Don Dodson Drive, Bedford, Texas. Plaintiff conducts business within the State of New

Jersey.

2.     Defendant, NJAW, is a New Jersey Corporation with its principal place of

business in Voorhees, New Jersey.

3.      Defendant, Shawl, is a New Jersey Corporation with its principal place of business at 5 Dolores Avenue, Marmora, New Jersey.

4.      This matter is properly venued in the state of New Jersey.

## NATURE AND BACKGROUND OF THIS ACTION

**The Rossner Action**

5.      This declaratory judgment action arises out of an incident that occurred on or about November 24, 2015, at a water main project located on Avalon Boulevard in Middle Township, New Jersey (the "Project").

6.      Shawl was hired by NJAW to perform work in connection with the extension of a water main running along Avalon Boulevard. During the course of the work, Jesse Rossner ("Rossner"), an employee of Shawl, allegedly sustained injuries to his face, neck and eyes.

7.      On or about October 11, 2017, Rossner filed suit against NJAW styled Jesse Rossner and Kearstin Rossner v. New Jersey American Water, et. al., venued in the Superior Court of New Jersey, Law Division, Camden County, Docket No. CAM-L-003958-17 (the "Rossner Action"). (See Rossner Complaint attached hereto as **Exhibit "A"**.)

8.      The Rossner Action sets forth allegations against NJAW for "Construction Site Negligence and Negligence". Specifically, Rossner alleges that NJAW was the general contractor at the Project and that NJAW had a non-delegable duty to provide a safe workplace for Rossner and all other employees. (See **Ex. A.**)

9.      The Rossner Action alleges that NJAW was negligent for failing to properly manage safety at the Project, for failing to manage and coordinate its subcontractors, for failing to hold safety meetings and for failing to inspect the Project for hazards. (See **Ex. A.**)

2

10.     The Rossner Action further alleges that NJAW's employee, Shawn Michaels, was negligent in charging the water line near where Rossner was working at the Project and for not having a "blow-off valve" at the end of the water main. The Rossner Action also alleges that NJAW was negligent for failing to inform Rossner that the water line was under pressure at the time he was performing work at the Project. (See Ex. A.)

**NJAW's Contract With Shawl**

11.     On or about November 10, 2015, NJAW and Shawl entered into a construction contract for the Project (the "Contract"). (See Contract, attached as **Exhibit "B"**.)

12.     The Contract sets forth the following Indemnification provision:

6.20 *Indemnification*

A. To the fullest extent permitted by Laws and Regulations, Contractor shall indemnify and hold harmless Owner and Engineer, and the officers, directors, partners, employees, agents, consultants and subcontractors of each and any of them from and against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance of the Work, provided that any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom but only to the extent caused by any negligent act or omission of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any Work or anyone for whose acts any of them may be liable.

*        *        *

**The NSIC Policy**

13.     NSIC issued a commercial general liability policy to Shawl, under policy number MEE0272355 for the policy period July 1, 2015 to July 1, 2016 (the "NSIC Policy"). (See NSIC Policy, attached as **Exhibit "C"**.)

14.     The NSIC Policy contains the following **Insuring Agreement**:

3

## SECTION I – COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

*　　*　　*

15.    The NSIC Policy also contains the following **Exclusions:**

This insurance does not apply to:

*　　*　　*

    b.    **Contractual Liability**

        "Bodily injury" or "property damage" for which the insured–is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1)    That the insured would have in the absence of the contract or agreement; or

        (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

4

    (a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

    (b)   Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*    \*    \*

**e.**    **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This insurance does not apply to liability assumed by the insured under an "insured contract".

\*    \*    \*

16.    The NSIC Policy also contains the following **Definitions:**

**SECTION V – DEFINITIONS**

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a   person, including death resulting from any of these at any time.

\*    \*    \*

9.   "Insured contract" means:

\*       \*       \*

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*       \*       \*

14.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*

17.   The NSIC Policy also contains the following Additional Insured endorsement:

### ASSOCIATED SITE IMPROVEMENT CONTRACTORS BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization  (called additional insured) whom you are required to add as an additional insured on this policy under:

1.   A written contract or agreement; or
2.  An oral contract or agreement where a certificate of insurance showing that a person or organization as an additional insured has been issued; but

The written or oral agreement must be:

1.   Currently in effect or becoming effective during the term of this policy; and
2.  Executed prior to the "bodily injury", "property damage", "personal injury" or "advertising injury".

B.  The insurance provided to the additional insured is limited as follows:

6

1.  That person or organization is only an additional insured with respect to liability arising out of:

   a.  Your premises;

   b.  "Your work" for the additional insured; or

   c.  Acts or omissions of the additional insured in connection with the general supervision of "your work".

*    *    *

3.  Except as defined as a covered contract in **Section 1., Coverage A**, Exclusion **2.b. Contractual Liability**, the coverage provided to the additional insured by this endorsement does not apply to:

*    *    *

   c.  "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work."

*    *    *

**NJAW's Tender**

18.     On or about September 17, 2018, counsel for NJAW forwarded correspondence to Shawl seeking a defense and indemnification based on certain provisions set forth in the Contract.  (See Correspondence, attached as **Exhibit "D".**)

19.     On February 19, 2018, Meadowbrook, Inc., on behalf of NSIC, forwarded correspondence advising that (1) the indemnification provision in the Contract was not applicable based on the allegations set forth against NJAW and its employee Shawn Michael; and (2) NJAW did not qualify as an additional insured on the NSIC Policy based on an exclusion for bodily injury arising out of any acts or omissions of the additional insured other than in connection with the general supervision of Shawl.  (See Correspondence, attached as **Exhibit**

7

"E".)  NSIC also reserved its right to rely on any other potentially applicable exclusions in the NSIC Policy.

20.    Thereafter, on or about March 11, 2019, NJAW filed a lawsuit styled <u>New Jersey American Water Company, Inc. v. F.W. Shawl & Sons, Inc.</u>, in the Superior Court of New Jersey, Law Division, Camden County (the "NJAW Action").  The NJAW Action sets forth allegations against Shawl for Indemnification (Count I) and Insurance Coverage (Count II).

21.    Count I alleges that, based on the Contract, Shawl is obligated to indemnify, defend and hold harmless NJAW from and against "any and all claims arising out of the work performed by Shawl."  It further provides that Shawl was to provide liability insurance identifying NJAW as an additional insured.  Accordingly, NJAW demands "common law and/or contractual indemnification from Shawl."

22.    Count II alleges that Shawl breached its contractual obligation to procure insurance for NJAW and sets forth a demand for insurance coverage against Shawl.

**Defense of Shawl Under a Reservation of Rights**

23.    On or about April 16, 2019, NSIC agreed to defend Shawl in connection with the NJAW Action under a complete reservation of rights.  (<u>See</u> Correspondence, attached as **Exhibit "F"**.)

24.    In its correspondence, NSIC advised Shawl that there was no coverage available to Shawl for the breach of contract allegations set forth in Count II because such allegations do not arise out of an "occurrence" as that term is defined in the NSIC Policy.

25.    In its correspondence, NSIC also reserved its right to rely on the Contractual Liability Exclusion in the NSIC Policy.

8

26.    In its correspondence, NSIC also reserved its right to rely on the Employer's Liability Exclusion in the NSIC Policy.

**COUNT I**
**(Declaratory Judgment - NJAW)**

27.    NSIC repeats, realleges, and incorporates by reference each and every aforementioned allegation as if fully set forth herein.

28.    The additional insured endorsement in the NSIC Policy contains an exclusion which states that "coverage provided to the additional insured by this endorsement does not apply to:  'bodily injury' or 'property damage' arising out of acts or omissions of the additional insured other than in connection with the general supervision of 'your work'."

29.    The allegations set forth against NJAW in the Rossner Action are limited to NJAW's own affirmative acts of negligence.

30.    Specifically, it is alleged that NJAW employee, Shawn Michaels, was negligent in charging the water line that Rossner was working on at the Project and for not having a "blow-off valve" at the end of the water main.  (See Ex. A.)

31.    Upon information and belief, testimony in the Rossner Action has confirmed that NJAW had exclusive control of the valve at issue on the water line at the time of the accident and that Shawn Michaels inadvertently turned the valve the wrong way resulting in the pressurization of the line at the time Rossner sustained his injuries.

32.    Based on the foregoing, NJAW does not qualify as an additional insured on the NSIC Policy since the alleged "bodily injury" sustained by Rossner arose out of NJAW's affirmative acts and/or omissions at the Project.

**WHEREFORE**, NSIC seeks a judgment:  (a) declaring that NJAW does not qualify as an additional insured on the NSIC Policy; (b) declaring that NSIC has no obligation to defend or

9

indemnify NJAW for the claims set forth against it in the Rossner Action; and (c) providing such other and further relief as this Court deems just and equitable.

**COUNT II**
**(Declaratory Judgment – NJAW and Shawl)**

33.   NSIC repeats, realleges, and incorporates by reference each and every aforementioned allegation as if fully set forth herein.

34.   The NSIC Policy contains an Employer's Liability Exclusion which precludes coverage for "'bodily injury' to an 'employee' of the insured arising out of and in the course of employment by the insured; or performing duties related to the conduct of the insured's business."

35.   The Employer's Liability Exclusion applies "whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury."

36.   Rossner was an employee of Shawl at the time of the accident.

37.   The exception to the Employer's Liability Exclusion for "liability assumed by the insured under an 'insured contract'" does not apply because Shawl did not assume NJAW's liability for its own independent acts of negligence in the Contract.

**WHEREFORE**, NSIC seeks a judgment: (a) declaring that NSIC is not obligated to defend or indemnify NJAW or Shawl for the claims set forth against them in the Rossner Action and the NJAW Action; (b) declaring that the Employer's Liability Exclusion precludes coverage under NSIC's Policy; and (c) providing such other and further relief as this Court deems just and equitable.

10

## COUNT III
### (Declaratory Judgment – Shawl)

38.    NSIC repeats, realleges, and incorporates by reference each and every aforementioned allegation as if fully set forth herein.

39.    The NSIC Policy's Insuring Agreement provides coverage for "bodily injury" only if the "bodily injury" is caused by an "occurrence".

40.    The NSIC Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

41.    The allegations set forth in Count II of the NJAW Action allege breach of contract against Shawl.

42.    Count II of the NJAW Action does not allege an "occurrence" as that term is defined in the NSIC Policy.

**WHEREFORE**, NSIC seeks a judgment: (a) declaring that NSIC is not obligated to defend or indemnify Shawl for the claims set forth against it in Count II of the NJAW Action; and (b) providing such other and further relief as this Court deems just and equitable.

## COUNT IV
### (Declaratory Judgment – Shawl)

43.    NSIC repeats, realleges, and incorporates by reference each and every aforementioned allegation as if fully set forth herein.

44.    The NSIC Policy contains a Contractual Liability Exclusion which precludes coverage for "bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

45.    Count I of the NJAW Action alleges that Shawl is obligated to defend and indemnify NJAW pursuant to the terms of the Contract.

11

46.    The exception to the Contractual Liability Exclusion for an "insured contract'" does not apply because Shawl did not assume NJAW's liability for its own independent acts of negligence in the Contract.

**WHEREFORE**, NSIC seeks a judgment:  (a) declaring that NSIC is not obligated to defend or indemnify Shawl for the claims set forth against it in the NJAW Action; (b) declaring that the Contractual Liability Exclusion precludes coverage under NSIC's Policy; and (c) providing such other and further relief as this Court deems just and equitable.

## DESIGNATION OF TRIAL COUNSEL

Please take notice that the attorney, Denise Marra DePekary, Esq., is hereby designated as trial counsel in the above-captioned litigation on behalf of National Specialty Insurance Company for the firm of Weber Gallagher Simpson Stapleton Fires & Newby LLP.

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP
*Attorneys for Plaintiff, United Specialty Insurance Company*

*/s/ Denise Marra DePekary*

Dated:  November 5, 2019          By:_____
                                          Denise Marra DePekary, Esq

# Exhibit A

CAM-L-003958-17 10/11/2017 2:29:39 PM Pg 1 of 13 Trans ID: LCV2017312800

ANDREW J. ROSSETTI – NJ ATTORNEY ID – 015791989

ROSSETTI & DEVOTO, P.C.
ATTORNEYS AT LAW
20 BRACE ROAD, SUITE 115
CHERRY HILL, NJ 08034
(856) 354-0900
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| JESSE ROSSNER AND KEARSTIN ROSSNER, H/W<br><br>Plaintiffs,<br><br>v.<br><br>NEW JERSEY AMERICAN WATER, a wholly owned subsidiary of AMERICAN WATER WORKS COMPANY, INC.; JOHN DOES #1-5 (fictitious names of individuals, sole proprietorships, partnerships, corporations and/or any other entities that repaired, inspected, maintained or serviced the product or its component parts); JOHN DOES #6-10 (fictitious names of individuals, sole proprietorships, partnerships, corporations and/or any other entities that conducted safety inspections at the location of the accident)<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION : CAMDEN COUNTY Docket No. CIVIL ACTION<br><br><br><br><br><br><br><br>**COMPLAINT, INITIAL DISCOVERY REQUESTS, REQUESTS FOR COPIES OF SUBPOENAED DOCUMENTS, STATEMENT OF DAMAGES, AND JURY DEMAND** |

Plaintiffs, Jesse & Kearstin Rossner residing at 1 N. Meadow Ridge Lane, Petersburg, New

Jersey, say:

CAM-L-003968-17   10/11/2017 2:29:39 PM  Pg 2 of 13 Trans ID: LCV2017312800

## COUNT ONE

### JESSE ROSSNER
v.
### NEW JERSEY AMERICAN WATER, a wholly owned subsidiary of AMERICAN WATER WORKS COMPANY, INC.

### CONSTRUCTION SITE NEGLIGENCE & NEGLIGENCE

1.      On November 24, 2015, Jesse Rossner sustained severe injuries at a construction work site at Avalon Boulevard in Swainton, New Jersey.

2.      On that date, Mr. Rossner was working construction as an employee of F.W. Shawl & Sons, Inc.

3.      At that time, Mr. Rossner was lawfully on the premises as a sub-contractor to defendant, New Jersey American Water, a wholly owned subsidiary of American Water Works Company, Inc. hereafter "American Water".

4.      Defendant American Water was the general contractor and/or superior contractor for the worksite.

6.      Defendant American Water has its principal place of business at 1025 Laurel Oak Road, Voorhees, New Jersey.

7.      Defendant American Water does business in Camden County, New Jersey.

8.      Defendant American Water had control of the work area during the construction period.

9.      Defendant American Water had a non-delegable duty to provide a safe workplace for Mr. Rossner and all other employees working at the property where Mr. Rossner was injured.

10.     Defendant American Water was negligent for failing to properly manage safety on the construction site, for failing to manage and coordinate its subcontractors, for failing to

-2-

hold safety meetings and toolbox meetings, and for failing to inspect the construction site for hazards.

    11.    Defendant American Water and their employee Sean Michaels were negligent for charging the water line near where Mr. Rossner was working on the construction site.

    12.    Defendant American Water was negligent for not having a blow-off valve at the end of the water main.

    13.    Defendant American Water was negligent for not informing Mr. Rossner that the water line was under pressure.

    14.    Defendant, New Jersey was otherwise negligent.

    15.    The aforementioned negligent acts of defendant American Water violated OSHA safety standards as well as other industry construction standards and practices.

    16.    As a proximate cause of the negligence of defendant American Water's negligence, Jesse Rossner has sustained serious and permanent injuries to his face, neck, eyes and severe hearing and vision issues, among other things. These injuries have and will continue to cause pain and suffering, disability and impairment, loss of enjoyment of life, medical bills, and lost wages.

    17.    As a proximate cause of defendant American Water's negligence, Jesse Rossner has also incurred a substantial workers compensation lien.

    WHEREFORE, the plaintiff, Jesse Rossner demands judgment against the defendant New Jersey American Water, a wholly owned subsidiary of American Water Works Company, Inc. for compensatory damages, interest, attorneys' fees, and costs of suit.

## COUNT TWO

### JESSE ROSSNER v. JOHN DOES #1-20

### CONSTRUCTION SITE NEGLIGENCE

1.      Plaintiff repeats all of the allegations of all of the preceding counts of this Complaint.

2.      John Does #1-20 are owners, architects, engineers, construction officials, builders, general contractors and subcontractors, construction managers, and their employees who were performing work at the subject construction site.

3.      At all times relevant hereto, John Does #1-20 had a duty to perform all work in a safe manner and in conformance with all applicable codes, industry standards, and applicable laws.

4.      Defendants John Does #1-20 had control of the work area during the construction period.

5.      Defendants John Does #1-20 had a non-delegable duty to provide a safe workplace to Mr. Rossner and all other employees working on the construction site.

6.      Defendants John Does #1-20 were negligent because they failed to perform work in a safe manner, failed to provide a reasonably safe workplace to Mr. Rossner, failed to follow safe construction practices.

7.      Defendant, John Does #1-20 were negligent in their design of the water main.

8.      As a proximate cause of the negligence of defendant John Does #1-20's, Jesse Rossner has sustained serious and permanent injuries to his face, neck, eyes and severe hearing

-4-

issues, among other things.  These injuries have and will continue to cause pain and suffering, disability and impairment, loss of enjoyment of life, medical bills, and lost wages.

9.      As a proximate cause of defendant John Does #1-20's negligence, Jesse Rossner has also incurred a substantial workers compensation lien.

WHEREFORE, the plaintiff, Jesse Rossner demands judgment against the defendant John Does #1-20 for compensatory damages, interest, attorneys' fees, and costs of suit.

## COUNT THREE

### JESSE ROSSNER v. JOHN DOES #20-25

#### NEGLIGENCE

1.      Plaintiff repeats all of the allegations of all of the preceding counts of this Complaint.

2.      On November 24, 2015, Jesse Rossner sustained severe injuries at a construction work site at Avalon Boulevard in Swainton, New Jersey.

3.      On that date, Mr. Rossner was working construction as an employee of F.W. Shawl & Sons, Inc.

4.      At that time, Mr. Rossner was lawfully on the premises as a sub-contractor to defendant, American Water.

5.      At all times relevant, defendant John Does #20-25 was employed by defendant, American Water and/or John Does #20-25.

6.      Defendant John Does #20-25's were negligent when they turned the valve on.

7.      Defendant John Does #20-25's were negligent for failing to warn plaintiff.

8.      Defendant John Does #20-25's were otherwise negligent.

9.     As a proximate cause of the negligence of defendant John Does #20-25's, Jesse Rossner has sustained serious and permanent injuries to his face, neck, eyes and severe hearing issues, among other things.  These injuries have and will continue to cause pain and suffering, disability and impairment, loss of enjoyment of life, medical bills, and lost wages.

10.    As a proximate cause of defendant John Does #20-25's negligence, Jesse Rossner has also incurred a substantial workers compensation lien.

WHEREFORE, the plaintiff, Jesse Rosaner demands judgment against the defendant John Does #20-25's for compensatory damages, interest, attorneys' fees, and costs of suit.

## COUNT FOUR

### KEARSTIN ROSSNER
v.
NEW JERSEY AMERICAN WATER, a wholly owned subsidiary of AMERICAN
WATER WORKS COMPANY, INC.;
JOHN DOES #1-20; JOHN DOES #20-25

### LOSS OF CONSORTIUM

1.     Kearstin Rossner, repeats all of the allegations of all of the preceding counts of this complaint.

2.     Kearstin Rossner and Jesse Rossner are husband and wife.

3.     As a proximate result of the conduct of the defendants, Kearstin Rossner, has been and in the future will be deprived of the services and society of her spouse.

WHEREFORE, the plaintiff, Kearstin Rossner, demands judgment against New Jersey American Water, a wholly owned subsidiary of American Water Works Company, Inc.; John Does #1-20; John Does #20-25 for compensatory damages, interest, and costs of suit.

-6-

CAM-L-003968-17   10/11/2017 2:29:39 PM  Pg 7 of 13 Trans ID: LCV2017312800

## DISCOVERY DEMAND – INTERROGATORIES
## (E-DISCOVERY PREFERRED)

Plaintiff hereby demands that each defendant answer Uniform Form C Interrogatories,

Form C(2) Interrogatories and the 10 supplemental interrogatories below within the time

prescribed by the Rules.  In lieu of mailing hard copies, plaintiff's counsel will accept electronic

transmission of all answers to interrogatories that are sent to nrosselli@rosselltklevoto.com.

### DEFINITIONS

The following definitions shall apply in answering Form C, C(2) and Supplemental
Interrogatories and to Requests for Production of Documents:

A.      "Address" means the present or last known street name and number, city or town, state
and zip code.

B.      "Document" or "documents" means the original and any identical or non-identical copy,
regardless of origin or location, of any writing or record of any type or description including, but
not limited to, the original and any copy, of any book, pamphlet, periodical, letter, memorandum,
telegram, report, record, study, inter-office or intra-office communication, handwritten or other
note, e-mail, working paper, chart, paper, graph, index, tape, disc, datasheet or data processing
card, or any other written, recorded, electronic, transcribed, punched, taped, filed or graphic
matter, however produced or reproduced, to which defendants have or have had access.

C.      "Identify", "identity", or "identification" means, when used in reference to:

    1.)     A natural person, his or her:

        (a)     full name;
        (b)     home address;
        (c)     business address;
        (d)     present or last known position, business affiliation, and job description.

    2.)     A company, corporation, association, partnership, or any legal entity other than a
    natural person:

        (a)     its full name;
        (b)     a description of the type of organization or entity;
        (c)     the address of its principal place of business;
        (d)     the jurisdiction of its incorporation or organization; and
        (e)     the date of its incorporation or organization.

anything relating to this matter including, but not limited to, the area involved in this accident or occurrence, or of any of the parties.

2.   The original or a legible copy of any and all statements, reports, or memoranda setting forth factual information disclosed in any and all investigations, inspections, tests or surveys regarding the claims or defenses involved in this action; excepting impression or opinions of counsel.

3.   Each and every policy of insurance under which any insurance company or indemnitor may be liable to the party upon whom this demand is served for payment of all or part of the amounts of a judgment or award entered in this matter against that party or against any person for whose acts that party is alleged to be responsible.

4.   Copy of all contracts entered into between you and the owner and/or any other contractor or subcontractor for the construction site at Avalon Boulevard in Swainton, New Jersey.

5.   Copy of any safety manuals or policy and procedure manuals in effect for the construction site at Avalon Boulevard in Swainton, New Jersey.

6.   Any statements of parties or witnesses in your possession regarding the incident that is described in the Complaint.

7.   The original or a legible copy of any written incident report concerning this incident or occurrence signed by or prepared by any party to this action.

8.   All diagrams, pictures, or sketches of the scene and/or manner in which this accident occurred.

9.   All drawings, diagrams, engineering drawings which depict the design of the water main where plaintiff was injured.

10.   List of all contractors and subcontractors with their specialty who worked on the worksite described in the complaint.

11.   Any and all reports and records from any and all government agency or police department pertaining to the accident or occurrence in question.

12.   Reports of each and every expert witness who is proposed to testify at trial on behalf of the party upon whom this demand is served.

13.   The complete C.V. of each expert who is proposed to testify at trial on behalf of the party upon whom this demand is served.

14.   A copy of your written occupational safety and health program and policy.

CAM-L-003958-17   10/11/2017 2:29:39 PM  Pg 11 of 13 Trans ID: LCV2017312800

15. Any and all OSHA documents related to the job at the worksite described in the complaint, including investigations, fines, penalties, citations, and reports.

16. Attach a copy of your complete construction file for the worksite described in the complaint, and include all corresponding contracts, offers, memorandums, approvals, design drawings and permits.

17. A copy of the New Jersey American Water Construction Managers Safety and Health program.

18. A copy of all minutes of any pre-job safety conference meetings for the worksite described in the complaint.

19. Copies of any minutes from safety meetings.

20. Copies of any documents given to contractors related to safety.

21. Copies of any safety letters, memos, or any documents transmitted between the defendant, construction manager, contractor, and subcontractors related to safety.

22. Copies of any safety inspection reports performed by any safety consultant, insurance company or outside agency related to the worksite described in the complaint.

23. All OSHA injury records for the past five (5) years.

24. Copies of all citations issued by OSHA related to this job.

## STATEMENT OF DAMAGES

The nature of plaintiffs damages are unliquidated and difficult to ascertain at this stage of the litigation. You may accept this initial demand for damages from each defendant as being the limits of the sum of each defendant(s) insurance policies.

## DEMAND FOR COPIES OF ALL SUBPOENED DOCUMENTS
### (E-DOCUMENTS PREFERRED)

Plaintiff hereby demands that copies of all subpoenaed documents by each defendant be produced to plaintiff without further notification within 10 days of receipt. The documents may

-11-

be supplied electronically by sending them to arossetti@rossettidevoto.com.  This is a continuing demand.

### DEMAND FOR COMPLIANCE WITH RULES 1:5-1(n) AND 4:17-4(c)

TAKE NOTICE that the undersigned attorney, counsel for the plaintiff, hereby demands, pursuant to the provisions of Rules 1:5-1(a) and 4:17-4(a), that each party serving pleadings or interrogatories and receiving responses thereto shall serve copies of all such pleadings, interrogatories, and responses thereto upon the undersigned, and further

TAKE NOTICE that this is a continuing demand.


### NOTICE OF OTHER ACTIONS

Pursuant to the provisions of R. 4:5-1, I hereby certify as follows:

1.     The matter in controversy is neither the subject of any other action pending in any other court nor of a pending arbitration proceeding.

2.     It is not anticipated that the matter in controversy will become the subject of any other action pending in any other court or of a pending arbitration proceeding.

3.     All parties who should have been joined in this action have been so joined.

I hereby certify that the foregoing statements I have made are true.  I am aware that if any of the statements I have made are willfully false, I am subject to punishment.

### DESIGNATION OF TRIAL ATTORNEY

PLEASE TAKE NOTICE that pursuant to the provisions of the Rules Governing the Courts of the State of New Jersey, Andrew J. Rossetti is hereby designated as the attorney who will try this case.

-12-

CAM-L-003958-17   10/11/2017 2:29:39 PM  Pg 13 of 13 Trans ID: LCV2017312800

### DEMAND FOR TRIAL BY JURY

PLEASE TAKE NOTICE that Plaintiff demands a trial by jury as to all issues pursuant to the Rules of this Court.

ROSSETTI & DEVOTO, P.C.
Attorneys for Plaintiff

By: _____
Andrew J. Rossetti

Dated: October//, 2017

-13-

# Exhibit B

# CONSTRUCTION AGREEMENT

THIS AGREEMENT is by and between ___New Jersey American Water Company, Inc.___ ("Owner") and ___FW Shawl & Sons, Inc.___ ("Contractor").

Owner and Contractor hereby agree as follows:

ARTICLE 1 -- WORK

Contractor shall complete all Work as specified or indicated in the Contract Documents. The Work is generally described as follows:

THE PROJECT:   **Avalon Boulevard, NJ Turnpike, Middle Township, Cape May County, NJ**

1.01   The Project for which the Work under the Contract Documents may be the whole or only a part is generally described as follows:

**2014076 AVALON BOULEVARD, NJ TURNPIKE, MIDDLE TOWNSHIP, CAPE MAY COUNTY, NJ**

**Install 1,760 LF of 12" DIP Water Main, 45 LF of 8" DIP Water Main, (1)-4" Domestic Service Stub, (1)-6" Fire Service Stub and (2) Public Fire Hydrants**

ARTICLE 2 – ENGINEER

2.01   The Project has been designed by:  **The RBA Group, Drew Markewicz, P.E. (Engineer).**

ARTICLE 3 – CONTRACT TIMES

3.01   *Time of the Essence*

    A.  All time limits for Milestones, if any, Substantial Completion, and completion and readiness for final payment as stated in the Contract Documents are of the essence of the Contract. Contractor and Owner recognize that time is of the essence of this Agreement and that Owner will suffer financial loss if the Work is not completed within the times specified in Paragraph 4.02 above, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions. The parties also recognize the delays, expense, and difficulties involved in proving in a legal or arbitration proceeding the actual loss suffered by Owner if the Work is not completed on time.

3.02   *Days to Achieve Substantial Completion and Final Payment*

    A.  The Work will be substantially completed within __45__ days after the date when the Contract Times commence to run as provided in Paragraph 2.03 of the General Conditions, and completed and ready for final payment in accordance with Paragraph 14.07 B of the General Conditions within __210__ days after the date when the Contract Times commence to run.

ARTICLE 4 – CONTRACT PRICE

4.01   Owner shall pay Contractor for completion of the Work in accordance with the Contract Documents an amount in current funds equal to the sum of the amounts determined pursuant to Paragraphs 5.01.A below:

For all Work, at the prices stated in Contractor's Bid, attached hereto as an exhibit (See attached price Schedules A & B) One Hundred Ninety-Five Thousand Ninety-Five Dollars and Twenty Cents ($195,095.20).

ARTICLE 5 – PAYMENT PROCEDURES

5.01   *Submittal and Processing of Payments*

A.   Contractor shall submit Applications for Payment in accordance with Article 14 of the General Conditions. Applications for Payment will be processed by Engineer as provided in the General Conditions.

5.02   *Progress Payments; Retainage*

A.   Owner shall make progress payments on account of the Contract Price on the basis of Contractor's Applications for Payment on or about the <u>25th</u> day of each month during performance of the Work as provided in Paragraphs 6.02.A.1.a and 6.02.A.1.b below. All such payments will be measured by the schedule of values established as provided in Paragraph 2.07.A of the General Conditions (and in the case of Unit Price Work based on the number of units completed) or, in the event there is no schedule of values, as provided in the General Requirements:

1.   Prior to Substantial Completion, progress payments will be made in an amount equal to the percentage indicated below but, in each case, less the aggregate of payments previously made and less such amounts as Engineer may determine or Owner may withhold, including but not limited to liquidated damages, in accordance with Paragraph 14.02 of the General Conditions:

a.   95 percent of Work completed (with the balance being retainage). If the Work has been 50 percent completed as determined by Engineer, and if the character and progress of the Work have been satisfactory to Owner and Engineer, then as long as the character and progress of the Work remain satisfactory to Owner and Engineer, there will be no additional retainage; and

b.   <u>100</u> percent of cost of materials and equipment not incorporated in the Work (with the balance being retainage).

B.   Upon Substantial Completion, Owner shall pay an amount sufficient to increase total payments to Contractor to <u>100</u> percent of the Work completed, less such amounts as Engineer shall determine in accordance with Paragraph 14.02.B.5 of the General Conditions and less <u>200</u> percent of Owner's determination of the value of Work to be completed or corrected as shown

on the tentative list of items to be completed or corrected attached to the certificate of Substantial Completion.

5.03  *Final Payment*

A. Upon final completion and acceptance of the Work in accordance with Paragraph 14.07 of the General Conditions, Owner shall pay the remainder of the Contract Price as recommended by Engineer as provided in said Paragraph 14.07.

## ARTICLE 6 – CONTRACTOR'S REPRESENTATIONS

6.01  In order to induce Owner to enter into this Agreement, Contractor makes the following representations:

A. Contractor has examined and carefully studied the Contract Documents and the other related data identified in the Bidding Documents.

B. Contractor has visited the Site and become familiar with and is satisfied as to the general, local, and Site conditions that may affect cost, progress, and performance of the Work.

C. Contractor is familiar with and is satisfied as to all federal, state, and local Laws and Regulations that may affect cost, progress, and performance of the Work.

D. Contractor has carefully studied all: (1) reports of explorations and tests of subsurface conditions at or contiguous to the Site and all drawings of physical conditions in or relating to existing surface or subsurface structures at or contiguous to the Site (except Underground Facilities) which have been identified in the Supplementary Conditions as provided in Paragraph 4.02 of the General Conditions and (2) reports and drawings of a Hazardous Environmental Condition, if any, at the Site which has been identified in the Supplementary Conditions as provided in Paragraph 4.06 of the General Conditions.

E. Contractor has considered the information known to Contractor, information and observations obtained from visits to the Site, information commonly known to contractors doing business in the locality of the Site, the Contract Documents, and the reports and drawings identified in the Contract Documents and referred to in Paragraph 7.01.D above with respect to the effect of such information and observations on (1) the cost, progress, and performance of the Work; (2) the means, methods, techniques, sequences, and procedures of construction to be employed by Contractor, including any specific means, methods, techniques, sequences, and procedures of construction expressly required by the Bidding Documents; and (3) Contractor's safety precautions and programs.

F. Based on the information and observations referred to in Paragraph 7.01.E above, Contractor does not consider that further examinations, investigations, explorations, tests, studies, or data are necessary for the performance of the Work at the Contract Price, within the Contract Times, and in accordance with the other terms and conditions of the Contract Documents.

G. Contractor is aware of the general nature of work to be performed by Owner and others at the Site that relates to the Work as indicated in the Contract Documents.

H.  Contractor is prepared to comply with the applicable requirements of Owner's safety program, if any.

I.  Contractor has given Engineer written notice of all conflicts, errors, ambiguities, or discrepancies that Contractor has discovered in the Contract Documents, and the written resolution thereof by Engineer is acceptable to Contractor.

J.  The Contract Documents are generally sufficient to indicate and convey understanding of all terms and conditions for performance and furnishing of the Work.

## ARTICLE 7 – CONTRACT DOCUMENTS

7.01  *Contents*

A.  The Contract Documents consist of the following:

1.  This Agreement (pages A1 to A-7, inclusive).

2.  Notice of Award.  (Note:  This document is not attached to this Agreement)

3.  General Conditions (Document Identification: Standard General Conditions of the Construction Contract – 2008 American Water System Addition, pages GC-0 to GC-61, not inclusive) as provided in the RFP dated 9/30/15 and hereby incorporated by reference..

4.  Supplementary Conditions (pages SC-1 to SC-X, not inclusive), as provided in the RFP dated 9/30/15 and hereby incorporated by reference.

5.  Specifications bearing the title Specifications and consisting of <u>4</u> divisions and <u>115</u> pages, as listed in the table of contents of the Project Manual (not inclusive) as provided in the RFP dated 9/30/15 and hereby incorporated by reference.

6.  Drawings with each sheet bearing the following general title: <u>Utility Plan – New Jersey Turnpike Authority Garden State Parkway – PMD Swainton Water Main Extension</u> (Note:  Drawings have been furnished with the RFP and are not attached to this Agreement).

7.  Exhibits to this Agreement (enumerated as follows):

    a.  **Price Schedules A & B of Contractor's Bid**

8.  The following which may be delivered or issued on or after the Effective Date of the Agreement and are not attached hereto:

    a.  Notice to Proceed

    b.  Work Change Directives.

    c.  Change Orders.

B. The documents listed in Paragraph 7.01.A are attached to this Agreement (except as expressly noted otherwise above).

C. There are no Contract Documents other than those listed above in this Article 7.

D. The Contract Documents may only be amended, modified, or supplemented as provided in Paragraph 3.04 of the General Conditions.

ARTICLE 8 – MISCELLANEOUS

8.01   *Terms*

A. Terms used in this Agreement will have the meanings stated in the General Conditions and the Supplementary Conditions.

8.02   *Assignment of Contract*

A. No assignment by Contractor of any rights under or interests in the Contract will be binding on Owner without the written consent of Owner; and, specifically but without limitation, moneys that may become due and moneys that are due may not be assigned without such consent (except to the extent that the effect of this restriction may be limited by law), and unless specifically stated to the contrary in any written consent to an assignment, no assignment will release or discharge Contractor from any duty or responsibility under the Contract Documents.

8.03   *Successors and Assigns*

A. Owner and Contractor each binds itself, its partners, successors, assigns, and legal representatives to the other party hereto, its partners, successors, assigns, and legal representatives in respect to all covenants, agreements, and obligations contained in the Contract Documents.

8.04   *Severability*

A. Any provision or part of the Contract Documents held to be void or unenforceable under any Law or Regulation shall be deemed stricken, and all remaining provisions shall continue to be valid and binding upon Owner and Contractor, who agree that the Contract Documents shall be reformed to replace such stricken provision or part thereof with a valid and enforceable provision that comes as close as possible to expressing the intention of the stricken provision.

8.05   *Contractor's Certifications*

A. Contractor certifies that it has not engaged in corrupt, fraudulent, collusive, or coercive practices in competing for or in executing the Contract. For the purposes of this Paragraph 10.05:

1. "Corrupt practice" means the offering, giving, receiving, or soliciting of any thing of value likely to influence the action of a public official in the bidding process or in the Contract execution.

2. "Fraudulent practice" means an intentional misrepresentation of facts made (a) to influence the bidding process or the execution of the Contract to the detriment of Owner, (b) to establish Bid or Contract prices at artificial non-competitive levels, or (c) to deprive Owner of the benefits of free and open competition.

3. "Collusive practice" means a scheme or arrangement between two or more Bidders, with or without the knowledge of Owner, a purpose of which is to establish Bid prices at artificial, non-competitive levels.

4. "Coercive practice" means harming or threatening to harm, directly or indirectly, persons or their property to influence their participation in the bidding process or affect the execution of the Contract.

8.06   *Other Provisions*

A. Government Regulations

1. The following clauses, where applicable, are incorporated in this Agreement by reference as is fully set out;  The Equal Opportunity Clause prescribed in 41 CFR 60-1.40, the Affirmative Action Clause prescribed in 41 CFR 60-250.4, regarding veterans and veterans of the Vietnam Era, and the Affirmative Action Clause for Handicapped Workers prescribed in 41 CFR 60-741.4.

IN WITNESS WHEREOF, Owner and Contractor have signed this Agreement.  Counterparts have been delivered to Owner and Contractor. All portions of the Contract Documents have been signed or have been identified by Owner and Contractor or on their behalf.

This Agreement will be effective on __11_/_10_/_2016_ (which is the Effective Date of the Agreement).

OWNER: NEW JERSEY AMERICAN WATER

Signature: _Ruth Gavel_

By:  Ruth Gavel

Title: Engineering Project Manager – Dev Srvs

Signature: _____

Witness: _____

Title: _Eng. Proj Mgr - DS_

Address for giving notices:

1025 Laurel Oak Road

Voorhees, NJ  08043

_____

(If Owner is a corporation, attach evidence
of authority to sign. If Owner is a public body,
attach evidence of authority to sign and resolution
or other documents authorizing execution
of Owner-Contractor Agreement.)

CONTRACTOR: FW Shawl & Sons, Inc.

Signature: _____

By:  (Print) _Andrew C Shawl_

Title: _President_

(If Contractor is a corporation, a partnership, or
a joint venture, attach evidence of authority to
sign.)

Attest: _____

Title: _Secretary_

Address for giving notices:

_5 Dolores Ave_

_Marlhora N.J. 07723_

[License No.: _63360_]

(Where applicable)

NOTE TO USER:  Use in those states or other
jurisdictions where applicable or required.

Agent for service of process:

_____

# Exhibit C

CPM-L-000440-19   11/05/2019 2:06:49 PM  Pg 2 of 54 Trans ID: LCV20192034212

# NATIONAL SPECIALTY INSURANCE COMPANY

**1900 L Don Dodson Drive  Bedford, TX 76021**
**(800) 482-2726**
**COMMERCIAL LINES POLICY**
**COMMON POLICY DECLARATIONS**

Renewal of Number: MEE0272355

**Policy No.**  MEE0272355

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)
F. W. Shawl & Sons, Inc.
As Per Named Insured Endorsement
5 Dolores Avenue
Marmora, NJ 08223

Policy Period: From 07/01/2015 to 07/01/2016 at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.
AUDIT PERIOD (if applicable)   ☒ ANNUALLY   ☐ QUARTERLY   ☐ SEMI-ANNUALLY   ☐ MONTHLY

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | |
| COMMERCIAL INLAND MARINE COVERAGE PART | |
| COMMERCIAL PROPERTY COVERAGE PART | |
| TERRORISM - CERTIFIED ACTS (GENERAL LIABILITY) | |
| TERRORISM - CERTIFIED ACTS (INLAND MARINE) | |
| TERRORISM - CERTIFIED ACTS (PROPERTY) | |
| **TOTAL:** | |
| NJ Property-Liability Insurance Guaranty Association Surcharge: | |
| **TOTAL PAYABLE:** | |

Premium shown is payable:$          at inception; $          1st Anniversary;$          2nd Anniversary

Form(s) and Endorsement(s) made a part of this policy at time of issue*:
See Attached Listing of Forms and Endorsements.

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned: _____   By _____
                                                        Authorized Representative

Agent License No.:

Rue Insurance, 3812 Quakerbridge Road, Trenton, NJ 08619-0006 (609)586-7474

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE
FORM(S) AND FORMS AND ENDORSEMENT, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

20 15 ML 0913          Includes copyrighted material of Insurance Services Office, Inc., with its permission,          **Page 1 of 4**
                              Copyright, Insurance Services Office, Inc , 1998

Original

**SUPPLEMENTAL - NAMED INSURED**

POLICY NUMBER: MEE0272355

F. W. Shawl & Sons, Inc.
VCS Properties LLC

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

# LISTING OF FORMS AND ENDORSEMENTS FORMING
# A PART OF THIS POLICY

POLICY NUMBER: MEE0272355

| NUMBER | TITLE |
|---|---|
| **COMMON** | |
| 20 15 ML (NS) (09-13) | Common Policy Declarations |
| IL 12 01 (11-85) | Policy Changes |
| IL 00 17 (11-98) | Common Policy Conditions |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 11 (11-03) | New Jersey Changes |
| IL 01 41 (09-08) | New Jersey Changes - Civil Union |
| IL 02 08 (09-07) | New Jersey Changes - Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 52 (01-15) | Cap on Losses from Certified Acts of Terrorism |
| IL 09 85 (01-15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| **PROPERTY** | |
| 39 57 CP (10-00) | Commercial Property Coverage Part Declarations Page |
| CP 00 10 (10-12) | Building And Personal Property Coverage Form |
| 57 25 CP (03-13) | Property Special Broadening Endorsement |
| CP 00 32 (10-12) | Business Income (Without Extra Expense) Coverage Form |
| CP 00 90 (07-88) | Commercial Property Conditions |
| CP 01 40 (07-06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 10 30 (10-12) | Causes of Loss - Special Form |
| **GENERAL LIABILITY** | |
| 52 47 IL (03-11) | Cancellation Notification |
| 20 14 GL (01-01) | Commercial General Liability Declarations |
| CG 00 01 (04-13) | Commercial General Liability Coverage Form |
| 32 34 GL (01-04) | Exclusion - Asbestos |
| 34 44 GL (03-99) | Employee Benefits Liability Coverage |
| 43 83 GL (08-04) | Pollution Exclusion - Clarifying Endorsement "Your Product" |
| 44 70 GL (04-05) | Associated Site Improvement Contractors Blanket Additional Insured Endorsement |
| 44 73 GL (04-05) | Associated Site Improvement Contractors Endorsement - General Liability |
| CG 21 06 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 67 (12-04) | Fungi or Bacteria Exclusion |
| CG 21 71 (01-15) | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap on Losses From Certified Acts of Terrorism |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

CPM-L-000440-19   11/05/2019 2:06:49 PM  Pg 5 of 54 Trans ID: LCV20192034212

# LISTING OF FORMS AND ENDORSEMENTS FORMING
# A PART OF THIS POLICY

POLICY NUMBER: MEE0272355

| NUMBER | TITLE |
|---|---|
| **GENERAL LIABILITY** | |
| CG 21 76 (01-15) | Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| CG 21 86 (12-04) | Exclusion - Exterior Insulation and Finish Systems |
| CG 22 92 (12-07) | Snow Plow Operations Coverage |
| CG 24 04 (05-09) | Waiver Of Transfer Rights Of Recovery Against Others To Us |
| CG 24 15 (10-01) | Limited Pollution Liability |
| CG 24 17 (10-01) | Contractual Liability - Railroads |
| CG 25 03 (03-97) | Designated Construction Project(s) General Aggregate Limit. |
| CG 25 04 (03-97) | Designated Location(s) General Aggregate Limit |
| CG 26 20 (10-93) | *New Jersey Changes - Loss Information* |
| **INLAND MARINE** | |
| 26 26 IM (NS) (09-13) | Commercial Inland Marine Declarations |
| IM 7005 (01-12) | Schedule of Coverage's Contractor's Equipment |
| IM 7008 (01-12) | Schedule of Coverages Contractors' Equipment Small Tools Floater |
| IM 7035 (01-12) | Equipment Leased or Rented to Others Schedule |
| IM 7105 (04-04) | Schedule of Coverages Installation Floater Coverage |
| 44 69 IM (04-05) | Property Loaned to Others |
| 44 72 IM (04-05) | Replacement Items |
| IM 7000 (04-04) | Contractor's Equipment Coverage |
| IM 7003 (04-04) | Small Tools Floater |
| IM 7013 (04-04) | Equipment Leased or Rented to Others Endorsement |
| IM 7037 (01-12) | Equipment Borrowed From Others |
| IM 7038 (01-12) | Continuing Rental or Lease Payments |
| IM 7100 (06-04) | Installation Floater Coverage |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

20 15 ML 0913                    Original                    Page 4 of 4

# CANCELLATION NOTIFICATION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILTY COVERAGE FORM**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**
**BUSINESS AUTO COVERAGE FORM**

### SCHEDULE

| Name of Person or Organization:<br>Remington Vernick & Walberg Engineers | Mailing Address:<br>4907 New Jersey Avenue<br>Wildwood, NJ 08260 |
|---|---|
| Number of Days' Notice: 30 | |

Paragraph **2.** of the **Cancellation** Common Policy Condition, or any applicable state cancellation endorsement, is amended to include the following as checked below:

| | |
|---|---|
| ☐ | In the event of cancellation for other than nonpayment of premium, we agree to send notification to the first Named Insured and to the person or organization shown in the Schedule above. Notification will be at least the number of days shown in the Schedule above. |
| ☒ | In the event of cancellation for nonpayment of premium, we agree to send notification to the first Named Insured and to the person or organization shown in the Schedule above. Notification will be at least ten (10) days before the effective date of cancellation. |

This advance notification of a pending cancellation of coverage is intended as a courtesy only.

All other policy terms, conditions, definitions and exclusions remain unchanged.

**Attached to and forming a part of Policy:**

| Named Insured:<br>F. W. Shawl & Sons, Inc. | | |
|---|---|---|
| Policy Number:<br>MEE0272355 | Endorsement Number: | Endorsement Effective Date: |

| Issued by: | Countersigned by Authorized Representative: |
|---|---|

(The above information is required only when this endorsement is prepared after the policy is issued.)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY  CHANGES

Policy Change
Number

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| MEE0272355 | 07/01/2015 | NATIONAL SPECIALTY INSURANCE CO. |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| F. W. Shawl & Sons, Inc.<br>As Per Named Insured Extension<br>5 Dolores Avenue<br>Marmora, NJ 08223 | Rue Insurance<br>3812 Quakerbridge Road<br>Trenton, NJ 08619-0006 |

COVERAGE PARTS AFFECTED
GENERAL LIABILITY

CHANGES

A 30 Day Notice of Cancellation endorsement is added and attached for the following entity:

Borough of Avalon
3100 Dune Drive
Avalon, NJ 08202

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

IL 12  01 11 85                                                                 Page  1  of  1

Original

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

Policy No. MEE0272355

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $2,000,000 | |
| Personal and Advertising Injury Limit | $1,000,000 | Any One Person/Org. |
| Each Occurrence Limit | $1,000,000 | |
| Damage To Premises Rented To You Limit | $100,000 | Any One Premises |
| Medical Expense Limit | $5,000 | Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

This Insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here:

(Enter Date or "None" if no Retroactive Date applies)

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Type of Business: ☐Individual    ☐ Joint Venture    ☐ Partnership    ☐Limited Liability Company
☒Organization, including a Corporation, (but not including a Partnership, Joint Venture or Limited Liability Company)
Business Description: ASIC Site Improvement Contractor
Location of All Premises You Own, Rent or Occupy:
001-001 Storage Building
            1431 Route 50
            Cape May
            Tuckahoe, NJ 08250

## CLASSIFICATION AND PREMIUM

| Loc. No | Classification | Code No | Prem Base | Rate Pr. Ops | Rate Prd/ C.O. | Advance Premium Pr. Ops | Advance Premium Prd/ C.O. |
|---|---|---|---|---|---|---|---|
| 001-001 | Contractors-Executive Supervisors or Executive Superintendents Products-completed operations are subject to the General Aggregate Limit TERRITORY: 517 | | | ███████ | | | |
| | Contractors-Subcontracted Work in Connection with Construction, Reconstruction, Erection or Repair-Not Buildings TERRITORY: 517 | 91581 | | ███████ | | | |

| | |
|---|---|
| Endorsement(s) Premium | ██████ |
| State Tax or Other | Refer to Common Dec |
| Total Policy Premium | ██████ |
| Total Advance Premium | ██████ |

Premium shown is payable:  At inception:
                           Each anniversary:

Audit Period (if applicable): ☒Annually   ☐ Semi-annually   ☐ Quarterly   ☐ Monthly

## FORMS AND ENDORSEMENTS ATTACHED:

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
See Listing of Forms and Endorsements

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY DECLARATIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.**

20 14 GL 01 01

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1998

Original

**Page 1 of 2**

| | | | | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| 001-001 | Snow and Ice Removal-Contractor TERRITORY: 517 | 99310 | | | | | |
| | Grading of Land TERRITORY: 517 | 95410 | | | | | |
| | Excavation TERRITORY: 517 | 94007 | | | | | |
| | Water Mains or Connections Construction TERRITORY: 517 | 99946 | | | | | |
| | Sewer Mains or Connections Construction TERRITORY: 517 | 98820 | | | | | |
| | Plumbing-Residential or Domestic TERRITORY: 517 | 98483 | | | | | |
| | Contractors Permanent Yards-Maintenance or Storage of Equipment or Material Products-completed operations are subject to the General Aggregate Limit TERRITORY: 517 | 91590 | | | | | |

**CLASSIFICATION AND PREMIUM**

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1998

**Page 2 of 2**

Original

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012        CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege, negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

      © Insurance Services Office, Inc., 2012      CG 00 01 04 13

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

© Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A and B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012  CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed as damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

CG 00 01 04 13      © Insurance Services Office, Inc., 2012      **Page 9 of 16**

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or, "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **2. Exclusions** under **Section I – Coverage A Bodily Injury and Property Damage Liability** and **Section I – Coverage B Personal and Advertising Injury Liability:**

This insurance does not apply to:

**Asbestos**

1.  "Bodily injury", "property damage" "personal and advertising injury" or medical expenses arising out of the inhalation or exposure to, or related in any way to, asbestos, silica, asbestos fibers, asbestos or silica dust, or asbestos contained in products or materials of any kind.

2.  Any loss, cost or expense arising out of any:

    (a) Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence of or effect of any kind of asbestos, silica, asbestos fibers, asbestos or silica dust, or asbestos contained in products or materials of any kind; or

    (b) Any law or regulation, or any request, demand, order, writ, injunction or judgment that any insured or others test for, monitor, cleaning up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence of or effect of any kind of asbestos, silica, asbestos fibers, asbestos or silica dust, or asbestos contained in products or materials of any kind.

3.  "Bodily injury", "property damage" "personal and advertising injury" or medical expenses, or any other action based upon the insured(s) supervision, removal, instructions, recommendations, warranties (expressed or implied), warnings or advice given or withheld regarding asbestos, silica, asbestos fibers, asbestos or silica dust, or asbestos contained in products or materials of any kind.

We shall not have the duty to defend any such claim or "suit".


This endorsement does not change any other provision of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**The provisions of this endorsement apply only to the Employee Benefits Liability coverage described below.**

### SCHEDULE

### LIMITS OF INSURANCE

| | |
|---|---|
| **Each Claim Limit** | $1,000,000 |
| **Aggregate Limit** | $2,000,000 |
| **Deductible Each Claim** | $1,000 |

**INSURING AGREEMENT**

We will pay under this endorsement those sums that the insured becomes legally obligated to pay as damages because of a claim brought by any "employee", former "employee", or their beneficiaries or legal representatives in connection with any negligent act, error, omission or breach of duty of the insured or any other person for whose acts the insured is legally liable, in the "Administration" of your "Employee Benefits Program."

This insurance applies only to negligent acts, errors, or omissions that:

    **a.** Occur during the policy period; and

    **b.** Take place in the "coverage territory".

We have the right and duty to defend any "suit" seeking those damages. But:

    **a.** The amount we will pay for damages is limited as described in the Limits Of Insurance in the above Schedule; and

    **b.** We may at our discretion, investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result; and

    **c.** Our right and duty to defend ends when we have used up the applicable Limits Of Insurance shown in the Schedule in the payment of judgments or settlements.

**EXCLUSIONS**

This insurance does not apply:

    **a.** To any dishonest, fraudulent, criminal or malicious act, or to libel, slander, discrimination or humiliation committed by any insured;

    **b.** To any "bodily injury", "personal injury", "advertising injury" or "property damage";

    **c.** To any claim for failure of performance of contract by any insured;

    **d.** Failure to comply with mandatory provisions of laws concerning workers' compensation, Social Security, disability benefits or unemployment compensation law, or any similar law;

    **e.** To any failure of any investment shares to perform as represented by any insured;

    **f.** To any advice given to any person to participate or not to participate in any plan included in the "Employee Benefits Program;"

    **g.** To any claim arising out of an insufficiency of funds to meet any obligation under any plan included in the "Employee Benefits Program;"

Includes copyrighted material of Insurance Services, with its permission.
Copyright, Insurance Services Office, Inc., 1999

**h.** To any claim based upon any persons failure or error in handling, settling, or paying a claim when coverage or benefit exists in an "Employee Benefits Program;"

**I.** To any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by any insured, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974 or Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99-272) or Section 9319 of the Omnibus Budget Reconciliation Act of 1986 (Public Law 99-509) or any amendments to these Acts;

**J.** If, as of the effective date of this endorsement, the insured had knowledge or could reasonably foresee any circumstances which might result in a claim;

**k.** To any fines, penalties or taxes.

**SUPPLEMENTARY PAYMENTS**

The SUPPLEMENTARY PAYMENTS – COVERAGES A AND B is extended to apply to Employee Benefits Liability Coverage.

**WHO IS AN INSURED**

Paragraph **2.** under SECTION II – WHO IS AN INSURED is replaced by the following:

**2.** The following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you while performing duties related to the "administration" of your "Employee Benefits Programs".

**b.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form.

Paragraph **4.** under SECTION II – WHO IS AN INSURED is amended to add the following:

**4. d.** The Employee Benefits Coverage provided in this endorsement does not apply to any negligent act, error or omission that was committed before you acquired or formed the organization.

**LIMITS OF INSURANCE**

The Limits of Insurance shown in the Schedule of this endorsement and the rules below, fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought;

**c.** Persons or organizations making claims or bringing "suits";

**d.** Acts, errors or omissions which result in loss; or

**e.** Plans included in your "Employee Benefits Program".

The Each Claim Limit is the most we will pay for damages arising out of any one claim. However, we will pay no more than would have been payable under the "Employee Benefits Program" had no error been made.

The Aggregate Limit is the most we will pay for the sum of all damages under this endorsement.

The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Includes copyrighted material of Insurance Services, with its permission.
Copyright, Insurance Services Office, Inc., 1999

**DEDUCTIBLE**

The Deductible, if shown in the Schedule, applies to each claim covered by this endorsement. We may pay part or all of the deductible amount in settlement of any claim or "suit." If we do, you agree to promptly reimburse us for the deductible amount we pay.

Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule. The Limits of Insurance applicable will not be reduced by the amount of this deductible.

Claims resulting from the same negligent act(s), error(s) or omissions(s) of one or more of the Insureds are a single claim, and only one deductible applies.

**CONDITIONS**

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

Paragraph **2.a.** Duties In The Event Of Occurrence, Offense, Claim Or Suit, is replaced by the following:

**2. a.**  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. Notice should include:

   **(1)**  A description of the act, error or omission and when it occurred; and

   **(2)**  The names and addresses of any "employees" who may suffer damages as a result of the act, error or omission.

Paragraph **4.** Other Insurance is amended to also apply to Employee Benefits Liability Coverage. The following is added to the Other Insurance section:

**4. d.**  If an Employee Benefits Liability loss covered under this endorsement is also covered in whole or in part under any other policy issued to the **Insured** prior to the inception date of this policy, our Limit of Insurance as stated in the Schedule shall be reduced by any amounts due the Insured on account of any loss under such prior insurance.

   Subject to the above paragraph and to all other terms and conditions of this policy, in the event that damages arising out of a claim covered under this endorsement is continuing at the time of termination of this coverage or policy, we will continue to protect the insured for liability in respect of such claim for damages without payment of additional premium.

**ADDITIONAL DEFINITIONS**

The following DEFINITIONS apply to this endorsement:

"Administration" means any of the following acts that you do or authorize a person to do:

   **a.**  Counseling "employees" on the "Employee Benefits Program":

   **b.**  Interpreting your "Employee Benefits Program";

   **c.**  Handling records for your "Employee Benefits Program"; or

   **d.**  Effecting enrollment, termination or cancellation of "employees" under your "Employee Benefits Program."

"Employee Benefits Program" means:

   **a.**  group life, accident, health insurance, retirement or pension plans; providing that no one other than an employee may subscribe to such insurance or plans;

   **b.**  profit sharing plans provided they are equally available to all eligible full time "employees";

   **c.**  "employee" stock subscription plans, providing they are equally available to all eligible full-time "employees";

   **d.**  "employee" travel, vacation, or savings plans;

   **e.**  workers' compensation insurance;

   **f.**  salary continuance plans, unemployment insurance, social security and disability benefits insurance;

   **g.**  or any similar plan.

          Includes copyrighted material of Insurance Services, with Its permission.
Copyright, Insurance Services Office, Inc., 1999

NATIONAL SPECIALTY INSURANCE COMPANY                                          GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLLUTION EXCLUSION - CLARIFYING ENDORSEMENT
# " YOUR PRODUCT "

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Under **Section I., Coverage A, 2. Exclusions,** Exclusion **f. Pollution** does not apply any "bodily injury" or "property damage" falling within the subparagraphs **f. (1)(b), (c),** or **(d),** or any loss, cost or expense falling within the subparagraph **f. (2):**

**a.**   From the time "your product" is placed in to use for its intended purposes(s);

**b.**   until "your product", any part of it, or any material containing "your product" is first taken out of use, abandoned, or transported, handled, stored, treated, disposed of, or processed as waste.

Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions remain the same.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASSOCIATED SITE IMPROVEMENT CONTRACTORS BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **WHO IS AN INSURED ( Section II )** is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under:

1. A written contract or agreement, or

2. An oral contract or agreement where a certificate of insurance showing that person or organization as an additional insured has been issued; but

The written or oral contract or agreement must be:

1. Currently in effect or becoming effective during the term of this policy; and

2. Executed prior to the "bodily injury", "property damage", "personal injury" or "advertising injury".

**B.** The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising our of:

   **a.** Your premises;

   **b.** "Your work" for the additional insured; or

   **c.** Acts or omissions of the additional insured in connection with the general supervision of "your work".

2. The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations.

3. Except as defined as a covered contract in **Section 1., Coverage A,** Exclusion **2.b. Contractual Liability,** the coverage provided to the additional insured by this endorsement does not apply to:

   **a.** "Bodily injury" or "property damage" occurring after:

      **(1)** All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed; or

      **(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

   **b.** "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work".

COMMERCIAL GENERAL LIABILITY

4.  The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including:

   a.  The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

   b.  Supervisory, or inspection activities performed as part of any related architectural or engineering activities.

C.  As respects the coverage provided under this endorsement, Paragraph **4.b.** of **Section IV — Commercial General Liability Conditions** is amended with the addition of the following:

   4.  **Other Insurance**

      b.  **Excess Insurance**

         This insurance is excess over:

         Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

All other policy terms, conditions, definitions and exclusions remain unchanged.

44 70 GL 04 05          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 2 of 2**

COMMERCIAL GENERAL LIABILITY

# ASSOCIATED SITE IMPROVEMENT CONTRACTORS ENDORSEMENT – GENERAL LIABILITY

Attached to and forming a part of Policy:

| Named Insured | | |
|---|---|---|
| Policy Number | Endorsement Number | Endorsement Effective Date |
| Issued by: | Countersigned by Authorized Representative; | |

*(The above information is required only when this endorsement is prepared after the policy is issued.)*

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILTY COVERAGE FORM**

### SCHEDULE

| **EXTENSIONS** | **INCLUDED LIMIT OF INSURANCE** |
|---|---|
| I.   Damage to Premises Rented To You | $ 300,000 |
| II.   Knowledge of Occurrence | |
| III.   Broad Form Named Insured | |
| IV.   Unintentional Failure to Disclose Hazards | |
| V.   Extended Personal Injury Coverage | |

The above Extensions may be subject to special coverage limitations. Please read the entire endorsement for complete explanation of the coverages.

The following changes apply to the **Commercial General Liability Coverage Form** as specified.

**I.   Damage to Premises Rented To You**

Paragraph **6.** of **Section III - Limits of Insurance** is replaced with the following:

   a.   Subject to **5.** above, the most we will pay under **Coverage A** for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire is described in the Schedule of this endorsement.

**II.   The following is added to Paragraph 2. of Section IV – Commercial General Liability Conditions:**

**Knowledge of "Occurrence"**

Knowledge of an "occurrence", claim, or "suit" by the agent, servant or employee of any insured shall not in itself constitute knowledge of the insured unless an executive officer or risk manager shall have received such notice from the agent, servant or employee.

---

**44 73 GL 04 05**       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       **Page 1 of 2**

CPM-L-000440-19   11/05/2019 2:06:49 PM  Pg 34 of 54 Trans ID: LCV20192034212

COMMERCIAL GENERAL LIABILITY

III. The following is added to **Section IV – Commercial General Liability Conditions:**

**Broad Form Named Insured**

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations and any business entity incorporated or organized under the laws of the United States of America (including any State thereof), its territories or possessions, or Canada (including any Province thereof) which the Named Insured shown in the Declarations owns, during the policy period, an interest in such entity of more than fifty percent (50%). If other valid and collectible insurance is available to any business entity covered by this policy solely by reason of an ownership by the Named Insured shown in the Declarations in excess of fifty percent (50%), this insurance is excess over the other insurance, whether primary, excess, contingent, or on any other basis.

**IV. Unintentional Failure To Disclose Hazards**

The following is added to Paragraph **6. Representations** of **Section IV – Commercial General Liability Conditions:**

**d.** Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

**V. Extended Personal Injury Coverage**

Under **Section VI – Definitions,** the following is added to the definition of "personal and advertising injury":

**h.** Alienation of affections;
**i.** Discrimination; or
**j.** Humiliation

All other policy terms, conditions, definitions and exclusions remain unchanged.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 05 14**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

  **2. Exclusions**

  This insurance does not apply to:

  **p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

    Damages arising out of:

    **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

    **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

    This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

    However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Access Or Disclosure Of Confidential Or Personal Information**

  "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

  This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04

© ISO Properties, Inc., 2003

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 71 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

CG 21 71 01 15                    © Insurance Services Office, Inc., 2015                    **Page 1 of 2**

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
CG 21 71 01 15

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

**COMMERCIAL GENERAL LIABILITY**
**CG 22 92 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SNOW PLOW OPERATIONS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Within the "products-completed operations hazard",
Exclusion **g.** under Section **I – Coverage A – Bodily
Injury And Property Damage Liability** does not
apply to any "auto" used for snow plow operations.

© ISO Properties, Inc., 2006                    **Page 1 of 1**

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Person Or Organization: |
|---|
| Any  person or organization  that you  have agreed in  writing in a contract or agreement  that you  waive such rights against  that  person  or  organization; provided the injury or damage occurs subsequent to the execution of the written contract or agreement. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV - Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09                © Insurance Services Office, Inc., 2008                **Page 1 of 1**   □

CPM-L-000440-19   11/05/2019 2:06:49 PM  Pg 43 of 54 Trans ID: LCV20192034212

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
**CG 24 15 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED POLLUTION LIABILITY
# EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Limited Pollution Liability Extension Aggregate Limit | $100,000 |
|---|---|
| Premium $ ▮▮▮▮▮ | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

I. Exclusion f. under Section I - Coverage A is replaced by the following:

  **2. Exclusions**

    This insurance does not apply to:

    **f. Pollution**

      **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        **(a)** At or from any premises, site or loca- tion which is or was at any time used by or for any insured or others for the handling, storage, disposal, process- ing or treatment of waste;

        **(b)** Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for:

          **(i)** Any insured; or

          **(ii)** Any person or organization for whom you may be legally responsible;

        **(c)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

        **(d)** At or from a storage tank or other container, ducts or piping which is below or partially below the surface of the ground or water or which, at any time, has been buried under the surface of the ground or water and then subsequently exposed by erosion, excavation or any other means if the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" arises at or from any premises, site or location:

          **(i)** Which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

CG 24 15 10 01

© ISO Properties, Inc.,  2000

**(II)** Which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, con- tractor or subcontractor.

Subparagraph **(d)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement issued or made pursuant to any environmental protection or environmental liability statutes or regulations that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for those sums the insured becomes legally obligated to pay as damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**II.** With respect to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**A.** The "Each Occurrence Limit" shown in the Declarations does not apply.

**B.** Paragraph **7.** of **Limits Of Insurance** (Section III) does not apply.

**C.** Paragraph **1.** of **Section III - Limits Of Insurance** is replaced by the following:

**1.** The Limits Of Insurance shown in the Schedule of this endorsement, or in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**D.** The following are added to **Section III - Limits Of Insurance:**

**8.** Subject to **2.** or **3.** above, whichever applies, the Limited Pollution Liability Extension Aggregate Limit shown in the Schedule is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

**9.** Subject to **8.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

© ISO Properties, Inc., 2000

CG 24 15 10 01

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
**CG 24 17 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY - RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Scheduled Railroad:**
NJ TRANSIT

**Designated Job Site:**
NJ TRANSIT CROSSING
WILEY STREET
MIDDLE TWP., NJ

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
**CG 24 17 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY - RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|

ANY RAILROAD AND JOB SITE LOCATED WITHIN THE COVERAGE TERRITORY IF REQUIRED TO
PROVIDE CONTRACTUAL LIABILITY FOR THE RAILROAD IN A WRITTEN CONTRACT OR AGREEMENT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations
as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

9. "Insured Contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

CG 24 17 10 01

© ISO Properties, Inc., 2000

**Page 1 of 1**

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 03 97**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Designated Construction Projects: ALL INSURED PROJECTS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

**CG 25 03 03 97**

CPM-L-000440-19  11/05/2019 2:06:49 PM  Pg 49 of 54 Trans ID: LCV20192034212

POLICY NUMBER: MEE0272355

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 03 97**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Location(s):** ALL INSURED LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

Copyright, Insurance Services Office, Inc., 1996

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

**CG 25 04 03 97**

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

CG 26 20 10 93                    Copyright, Insurance Services Office, Inc., 1992                    **Page 1 of 1**      □

# COMMERCIAL LINES POLICY

## *NATIONAL SPECIALTY INSURANCE COMPANY*

( a stock company )

### 1900 L Don Dodson Drive
### Bedford, TX 76021

JCL 0003 0414 (NS)

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless signed by a duly authorized representative of the company.

_____
Secretary

_____
President

JCL 0003 0414 (NS)

**National Specialty Insurance Company, Inc.**

**Policy Holder Privacy Statement**

As a policyholder of National Specialty Insurance Company, Inc., you may remember that you purchased your National Specialty Insurance Company, Inc. policy from an insurance agent. Please understand that the agent from whom you purchased your National Specialty Insurance Company, Inc. policy is not affiliated with National Specialty Insurance Company, Inc., but rather is a separate legal entity. In the process of purchasing your National Specialty Insurance Company, Inc. policy, you may have provided your insurance agent with various information, including nonpublic personal information about yourself. You did not provide any such information directly to National Specialty Insurance Company, Inc., but on occasion we may receive such information from your insurance agent. This statement is intended to explain and disclose National Specialty Insurance Company, Inc.'s policies and practices regarding the collection, disclosure and protection of such information.

National Specialty Insurance Company, Inc. will provide customers like yourself with a copy of our privacy policy at the beginning of our relationship and annually thereafter, unless and until our relationship ends. As our products and services continue to evolve, it may be necessary to review and revise our privacy policies, in which case we will provide you with an updated privacy notice.

I.      Financial Information Collected.

During the ordinary course of our business, National Specialty Insurance Company, Inc. may – as explained above – collect information about you from the following sources:

- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

II.     Financial Information Disclosed.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

III.    Parties To Whom Information is Disclosed.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

IV.     Confidentiality and Security of Information.

We restrict access to information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to guard your information.

V.      Access to and Correction of Your Information.

You may write to us if you have any questions about the information that we may have in our records about you. We will respond within 30 business days from the date such request is received to your inquiry. If you wish, you may review this information in person or receive a copy at a reasonable charge. You can notify us in writing if you believe any information should be corrected, amended, or deleted and we will review your request. We will either make the requested change or explain why we did not do so. If we do not make the requested change, you may submit a short written statement identifying the disputed information, which will be included in all future disclosures of your information.

We value your business. This statement is for your information. No response is necessary.

# Exhibit D

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN
ATTORNEYS·AT·LAW    WWW.MARSHALLDENNEHEY.COM

A  PROFESSIONAL  CORPORATION

15000 Midlantic Drive, Suite 200, P.O. Box 5429, Mount Laurel, NJ 08054
(856) 414-6000  Fax  (856) 414-6077
*Richard L. Goldstein, Resident Managing Attorney*

Direct Dial:  (856) 414-6008
Email:  pcjohnson@mdwcg.com

| | |
|---|---|
| PENNSYLVANIA<br>Allentown<br>Doylestown<br>Erie<br>Harrisburg<br>King of Prussia<br>Philadelphia<br>Pittsburgh<br>Scranton | OHIO<br>Cincinnati<br>Cleveland<br><br>FLORIDA<br>Ft. Lauderdale<br>Jacksonville<br>Orlando<br>Tampa |
| NEW JERSEY<br>Mount Laurel<br>Roseland | NEW YORK<br>Long Island<br>New York City<br>Westchester |
| DELAWARE<br>Wilmington | |

September 17, 2018

F.W. Shawl & Sons, Inc.
5 Dolores Avenue
Marmora, NJ 08223

> RE:   Jesse & Kearstin Rossner v. New Jersey – American Water Company, Inc.
> Docket No.:   CAM-L-3958-17
> Our File No.:  41103.00111

Dear Madam/Sir:

Our office represents the defendant, New Jersey – American Water Company, Inc., in the above-referenced matter.  This matter arises out of an alleged incident which occurred on November 24, 2015 during a project known as the Avalon Boulevard, New Jersey Turnpike, Middle Township, Cape May County, New Jersey water main extension.  New Jersey – American Water Company, Inc. contracted with F.W. Shawl & Sons to install 1,760 linear feet of 12 inch DIP water main, 45 linear feet of 8 inch DIP water main, (1)-4 inch domestic service stub; (1) – 6 inch fire service stub and (2)-public fire hydrants.  A copy of the fully executed Construction Agreement is attached hereto.

In their Complaint, the plaintiff, Jesse Rossner, an employee of F.W. Shawl & Sons, Inc. at the time of this incident, alleges personal injuries arising out of his work performed on behalf of F.W. Shawl & Sons, during this construction project.  A copy of the plaintiff's Complaint is attached hereto.  Per the Standard General Condition of the construction contract, 2008 edition, F.W. Shawl & Sons, Inc. shall indemnify and hold harmless New Jersey – American Water Company, Inc. against all claims arising out of or relating to the performance of the work performed by Shawl & Sons.  See Section 6.20 of the Standard General Conditions of Contract attached hereto.

New Jersey – American Water Company, Inc. demands defense and indemnification from F.W. Shawl & Sons for the claims asserted by the plaintiff, Jesse Rossner and Kearstin Rossner, his wife.

.W. Shawl & Sons, Inc.
September 17, 2018
Page 2

_____  _____

      Kindly respond to this demand for defense and indemnification at your earliest convenience.   Thank you.

                      Very truly yours,

                      Paul C. Johnson

PCJ:csc
Encl.
LEGAL/118444848.v1

# Exhibit E

CPM-L-000440-19   11/05/2019 2:06:49 PM Pg 2 of 4 Trans ID: LCV20192034212



February 19, 2018

Via electronic, certified and regular mail
91 7199 9991 7038 1292 4594
DMINELL@travelers.com

Dawn Minell
Travelers
445 South Street
Morristown, NJ 07960

RE:   _Jesse Rossner and Kearstin Rossner v. New Jersey American Water, et al._
Your Insured:       New Jersey American Water Company, Inc.
Your Claim No.:    FAW6339
Our Insured:        F.W. Shawl & Sons, Inc.
Our Policy No.:     MEE0272355
Our Claim No.:      GLBW17010589

### TENDER DECLINATION

Dear Ms. Minell:

As you know, I am a Claims Attorney with Meadowbrook, Inc. assigned to handle the above claim on behalf of National Specialty Insurance Company, Inc. ("National Specialty"), the Commercial General Liability insurer for F.W. Shawl & Sons, Inc. ("Shawl").

National Specialty received Travelers' tender on behalf of its insured, New Jersey American Water Company, Inc. ("NJAW"), regarding the lawsuit filed by Jesse Rossner for injuries sustained on 11/24/2015 when he was working as an employee of Shawl at a construction site at Avalon Boulevard in Swainton, NJ. Per the terms of NJAW's contract with Shawl, you are demanding that National Specialty defend and indemnify NJAW for any liability related to this incident, as well as demanding that NJAW be given additional insured status under Shawl's policy with National Specialty.

Per the terms of the contract that you provided, Shawl is required to indemnify NJAW for claims arising out the subject work, but only to the extent that any such claims are caused by the negligent acts or omissions of Shawl or its subcontractors. The Complaint filed by the plaintiffs states that Mr. Rossner was working on the project as an employee of Shawl, but the only allegation of negligence is against NJAW and its employee in causing the accident that gave rise to Mr. Rossner's injuries. Therefore, the indemnity requirements of the contract are not applicable to this accident.

Also, the National Specialty policy does include additional insured coverage which would potentially apply to NJAW, but the policy specifically excludes coverage to any additional insured for bodily injury or property damages arising out of acts or omissions of the additional insured other than connection with the general supervision of Shawl's work. In this case there is

Hal Thompson
Claims Attorney
hthompson@centurysurety.com | 614-543-7405
Mailing Address: P.O. Box 219569 Kansas City, MO 64121-9559
Physical Address: 550 Polaris Parkway, Ste. 300, Westerville, OH 43082
Phone: 800-876-7389   Fax: 614-895-7040 or 602-371-0113   Website: www.centurysurety.com

Page 2 of 3

no allegation that NJAW failed to supervise Shawl's work, but rather that NJAW specifically caused the injuries.

Accordingly, there is no coverage available to NJAW under the National Specialty policy, and we therefore must respectfully decline to accept Travelers' tender.

As information continually presents itself, should at any time you feel there is new information which may alter this decision on coverage, please notify us immediately, and we will take steps to review the information and re-evaluate our coverage position at that time. Please understand that National Specialty may raise additional applicable policy provisions and defenses that may be found to apply based on any new information we receive.

The foregoing in no way constitutes, nor should it be considered as a waiver or relinquishment by National Specialty of all other defenses available to it under the terms and conditions of the Policy, and neither anything in this document nor any act of National Specialty is to be construed as a waiver of any known or unknown defense. Additionally, the foregoing in no way restricts or limits National Specialty from relying upon and asserting other facts and grounds that are, or may become available to it.

Notice: Please be advised that we have an Internal Appeals Review Procedure in accordance with N.J.S.A. 17:29E-9 and N.J.A.C. 11:25 et seq. If you disagree with the Company's disclaimer and reservation of rights you can avail yourself of the Company's Internal Appeal Procedure by sending a written request to: Daniel Mayer, c/o Meadowbrook Insurance Group, P.O. Box 219559 Kansas City, MO 64121-9559 The Company will then forward to you the necessary appeals form and advise you on how the appeals process works.

Upon review of this correspondence, if you have any questions, or if you wish to discuss this matter in more detail, please do not hesitate to contact me at (614) 543-7405 or hthompson@centurysurety.com.

Sincerely,

MEADOWBROOK INC.

Hal Thompson
Claims Attorney

HT/pjh

cc:    F.W. Shawl & Sons, Inc.
       5 Dolores Avenue
       Marmora, NJ 08223

       Rue Insurance
       Via email to: mmccarty@rueinsurance.com

Page 3 of 3

| WARNING |
| --- |
| "Any person who knowingly and with intent to defraud any insurance company files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties." |
| Revised 01/2013 |

# Exhibit F



# MEADOWBROOK
## INSURANCE GROUP.

April 16, 2019

Via certified and regular mail
**9489 0090 0027 6061 3127 51**

Andrew C. Shawl, PE PP
F.W. Shawl & Sons, Inc.
5 Dolores Avenue
Marmora, New Jersey 08223

Re:    <u>New Jersey American Water Company, Inc. v. F.W. Shawl & Sons, Inc.</u>
        Superior Court of New Jersey, Law Division, Camden County,
        Docket No. CAM-L-00092-19
        Insured:    F.W. Shawl & Sons, Inc.
        Policy No.:   MEE0272355
        Claim No.:   GLBW17010589

Dear Mr. Shawl:

Please be advised that I am a Claims Attorney with Meadowbrook, Inc., assigned to handle the above claim on behalf of National Specialty Insurance Company, Inc. ("NSIC"). The following correspondence shall serve as NSIC's initial acknowledgement and reservation of rights issued to F.W. Shawl & Sons, Inc. ("Shawl"). As set forth more fully herein, NSIC will defend Shawl in connection with the above-referenced claim under a complete reservation of rights.

## FACTUAL BACKGROUND

The foregoing claim arises out of an underlying incident that occurred on or about November 24, 2015, at a water main project located at Avalon Boulevard in Middle Township, New Jersey (the "Project"). Shawl was hired by New Jersey American Water Company, Inc. ("NJAW") to perform work in connection with the extension of the water main running along Avalon Boulevard. During the course of the work, Jesse Rossner, an employee of Shawl, allegedly sustained injuries to his face, neck and eyes due to a pressure in the line. On or about October 11, 2017, Rossner filed a lawsuit against NJAW styled <u>Jesse Rossner and Kearstin Rossner v. New Jersey American Water, et. als.</u>, filed in the Superior Court of New Jersey, Law Division, Camden County, Docket No. CAM-L-003958-17. (the "Rossner Complaint").

The Rossner Complaint sets forth allegations against NJAW for "Construction Site Negligence and Negligence". Specifically, the Rossner Complaint alleges that NJAW was the general contractor at the Project and that NJAW had a non-delegable duty to provide a safe workplace for Rossner and all other employees. It is alleged that NJAW was negligent for failing to properly manage safety at the Project, for failing to manage and coordinate its subcontractors, for failing to hold safety meetings and for failing to inspect the Project for hazards. The Rossner Complaint

Christopher Leapley
Claims Attorney
Christopher.Leapley@ameritrustgroup.com| 614-543-7089
Mailing Address: P.O. Box 219559 Kansas, City, MO 64121-9559
Physical Address: 550 Polaris Parkway, Suite 300, Westerville, OH 43082
Phone: 800-876-7389   Fax: 614-895-7040   Website: www.centurysurety.com

Page 2 of 8

further alleges that NJAW's employee, Sean Michaels, was negligent in charging the water line near where Rossner was working at the Project and for not having a "blow-off valve" at the end of the water main. The Rossner Complaint also alleges that NJAW was negligent for failing to inform Rossner that the water line was under pressure at the time he was performing work at the Project.

NJAW entered into a construction contract with Shawl for the Project on November 10, 2015 (the "Contract"). The Contract sets forth the following relevant insurance and indemnification provisions:

### 5.04 *Contractor's Insurance*

    A. Contractor shall purchase and maintain such insurance as is appropriate for the Work being performed and as will provide protection from claims set forth below which may arise out of or result from Contractor's performance of the Work and Contractor's other obligations under the Contract Documents, whether it is to be performed by Contractor, any Subcontractor or Work, or by anyone whose acts any of them may be liable:

       2. claims for damages because of bodily injury, occupational sickness or disease, or death of Contractor's employees;

    B. The policies of insurance required by this Paragraph 5.04 shall:

       1. With respect to insurance required by Paragraphs 5.04.A.3 through 5.04.A.6 inclusive, be written on an occurrence basis, include as additional insureds (subject to any customary exclusion regarding professional liability) Owner and Engineer, and any other individuals or entities identified in the Supplementary Conditions, all of whom shall be listed as additional insureds, and include coverage for the respective officers, directors, partners, employees, agents, consultants and subcontractors of each and any of all such additional insureds, and the insurance afforded to these additional insureds shall provide primary coverage for all claims covered thereby;

### SC-5.04 Contractor's Insurance

    C. The limits of liability for the insurance required by Paragraph 5.04 of the General Conditions shall provide coverage for not less than the following amounts or greater where required by Laws and Regulations:

*   *   *

    a. Commercial General Liability:

| | |
|---|---|
| $1,000,000 | per occurrence Combined Single Limits. |
| $1,000,000 | General Aggregate. |
| $1,000,000 | Products and Completed Operations Aggregate. |
| $1,000,000 | Completed Operations-Products Liability |

    CGL ISO 1996 or later occurrence form including premises and operations coverage, products and completed operations, coverage for independent

contractors, personal injury coverage and blanket contractual liability, contractors protective liability if Contractor subcontracts all or any portion of the work to be performed hereunder. Completed operations shall be maintained for a period of three (3) years following final completion for any construction, renovation, repair and maintenance service.

\*        \*        \*

2. All commercial general liability including completed operations-products liability coverage and automotive liability insurance shall designate Owner, its parent, affiliates and subsidiaries, its directors, officers and employees as additional insured. All such insurance shall be primary and non-contributory, and is required to respond and pay prior to any other insurance or self-insurance available to Owner. In addition to the liability limits available, such insurance will pay on behalf of or will indemnify Owner for defense costs. Any other coverage available to Owner applies on a contingent and excess basis. Such insurance shall include appropriate clauses pursuant to which the insurance companies shall wave its rights of subrogation against Owner.

\*        \*        \*

6.20 *Indemnification*

A. To the fullest extent permitted by Laws and Regulations, Contractor shall indemnify and hold harmless Owner and Engineer, and the officers, directors, partners, employees, agents, consultants and subcontractors of each and any of them from and against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance of the Work, provided that any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom but only to the extent caused by any negligent act or omission of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any Work or anyone for whose acts any of them may be liable.

Based on the foregoing provisions in the Contract, on or about March 11, 2019, NJAW filed a lawsuit styled New Jersey American Water Company, Inc. v. F.W. Shawl & Sons, Inc., in the Superior Court of New Jersey, Law Division, Camden County, Docket No. XXX (the "NJAW Complaint"). The NJAW Complaint sets forth allegations against Shawl for indemnification (Count I) and Insurance Coverage (Count II). The NJAW Complaint alleges as "Background," among other things, that pursuant to the Contract, Shawl was "obligated to 'supervise inspect and direct the work competently and efficiently," and that Shawl was "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work..." NJAW further asserts that, while it "den[ies] any obligations or negligence to Rossner, NJAW hereby incorporates the averments made within Rossner's Complaint and directs the same to Shaw." Count I sets forth allegations that, based on the Contract, Shawl is required to indemnify, defend and hold harmless NJAW from and against "any and all claims arising out of the work performed by Shawl." It further provides that Shawl was to provide liability insurance identifying NJAW as an

Page 4 of 8

additional insured.  Accordingly, NJAW demands "common law and/or contractual indemnification from Shawl."  Count II alleges that Shawl breached its contractual obligation to procure insurance for NJAW and sets forth a demand for insurance coverage against Shawl.

## COVERAGE PROFILE

National Specialty Insurance Company issued a commercial general liability policy to F.W. Shawl & Sons, Inc., 5 Dolores Avenue, Marmora, New Jersey under policy number MEE0272355 for the policy period July 1, 2015 to July 1, 2016 (the "NSIC Policy").  The NSIC Policy has limits of $1 million per occurrence and a $2 million general aggregate limit.

The NSIC Policy contains the following relevant **Insuring Agreement**:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

The NSIC Policy also contains the following relevant **Exclusions**:

   This insurance does not apply to:

   *          *          *

   b.  **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

   (1)  That the insured would have in the absence of the contract or agreement; or

   (2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

   (b)  Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   *          *          *

Page 5 of 8

 **e. Employer's Liability**

  "Bodily injury" to:

  (1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

  (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

   This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This insurance does not apply to liability assumed by the insured under an "insured contract".

The NSIC Policy also contains the following relevant **Definitions:**

 **SECTION V -- DEFINITIONS**

 **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a  person, including death resulting from any of these at any time.

       *  *  *

 **9.** "Insured contract" means:

       *  *  *

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

       *  *  *

 **14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**COVERAGE POSITION**

**I.** **Satisfaction of the Insuring Agreement**

Pursuant to the language of the Insuring Agreement in the NSIC Policy, Shawl must demonstrate that the claims asserted against it are for "bodily injury" resulting from an "occurrence" which takes

Page 6 of 8

place within the relevant policy period. The NSIC Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

Here, Count II of the NJAW Complaint sets forth a claim for breach of contract/failure to procure insurance against Shawl. This claim does not arise out of an "occurrence" as that term is defined in the NSIC Policy. Accordingly, there is no coverage available under the NSIC Policy for Count II.

## II.   Relevant Policy Exclusions

### A. Contractual Liability

The "Contractual Liability" exclusion in the NSIC Policy precludes coverage "bodily injury" for which Shawl "is obligated to pay damages by reason of the assumption of liability in a contract or agreement." There is an exception to this exclusion for liability assumed pursuant to an "insured contract". An "insured contract" is defined, in relevant part, as "that part of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for 'bodily injury'...to a third person or organization."

Here Count I of the NJAW Complaint sets forth a claim for contractual indemnification against Shawl. NSIC reserves its right to disclaim coverage to Shawl to the extent the Contract does not qualify as an "insured contract" as that term is defined in the NSIC Policy.

### B. Employer's Liability

The "Employer's Liability" exclusion in the NSIC Policy precludes coverage for "bodily injury" to an "employee" of Shawl that is "arising out of and in the course (a) of employment by the insured; or (b) performing duties related to the conduct of the insured's business." There is an exception to this exclusion for "liability assumed by the insured under an 'insured contract'".

Here, Count I of the NJAW Complaint sets forth claims for both common law and contractual indemnification against Shawl. With respect to NJAW's claims for common law indemnification, the "Employer's Liability" exclusion in the NSIC Policy necessarily precludes coverage for this claim, as it stems from a claim for "bodily injury" to an employee of Shawl. With respect to NJAW's claim for contractual indemnification, NSIC reserves its right to disclaim coverage to Shawl to the extent the Contract does not qualify as an "insured contract" as that term is defined in the NSIC Policy.

## CONCLUSION

As set forth above, at this time NSIC will defend Paramount under a complete reservation of rights to disclaim coverage in whole or in part for this matter pursuant to the terms, conditions, limitations and exclusions of the NSIC Policy. NSIC specifically disclaims any obligation to indemnify Shawl in connection with the breach of contract/failure to procure insurance claim set forth in Count II of the NJAW Complaint.

*Please be advised that, in view of NSIC's reservation of rights to disclaim coverage, Shawl has the right to accept or reject the foregoing defense offered to it by NSIC. If Shawl elects to reject this defense, Shawl may choose its own counsel and assume control of the defense of this action at its own expense. If Shawl accepts this offer of defense, NSIC will*

Page 7 of 8

appoint Stephen J. Alexander from Capehart Scatchard to represent it in this case, and will pay the fees associated with that representation.

The foregoing statement of NSIC's position is based on information with which NSIC has been provided to date. This letter is not intended to be, nor is it to be construed as, an exhaustive listing of all the terms, conditions, limitations and exclusions of the NSIC Policy which might further limit or preclude coverage for this matter. NSIC expressly reserves all rights under the NSIC Policy, and available at law, to supplement this correspondence and/or to disclaim coverage on additional or alternative bases if other terms, conditions, exclusions, endorsements and provisions of the policy are found to be applicable. NSIC further reserves the right to file a declaratory judgment action seeking a declaration of its rights and obligations with respect to this claim.

NOTICE: Please be advised that we have established an Internal Appeals Review Procedure in accordance with N.J.S.A. 17:29E-9 and N.J.A.C. 11:25 et seq. If Shawl disagrees with the position set forth in this letter, Shawl can avail itself of our company's Internal Appeals procedure by sending a written request to: Daniel Mayer, c/o Ameritrust Group, Inc., P.O. Box 163350, Columbus, Ohio 43216. If you request, we will forward to you any necessary appeals form and advise you on how the appeal process works.

Pursuant to N.J.A.C. 11:25-1.7(b) & (d), should you desire to contact the New Jersey Office of Insurance Claims Ombudsman regarding USIC's position, we provide the following information:

> Office of Insurance Claims Ombudsman
> Department of Banking and Insurance
> PO Box 472
> Trenton, New Jersey 08625-0472
> Telephone: (800) 446-7467
> Telefax: (609) 292-2431
> Email: ombudsman@dobi.state.nj.us

NSIC's position as set forth herein is based on the facts as presented to NSIC to date, and should not be construed as applicable to any new claim(s) or amendment(s) to this claim. In the event that any new or amended claims are asserted against Shawl, please forward them to NSIC immediately.

If you are aware of any additional information or authorities that you would like us to consider, we ask that you please provide it to us immediately.

Sincerely,

NATIONAL SPECIALTY INSURANCE COMPANY

Christopher D. Leapley
Claims Attorney

CL/pjh

Page 8 of 8

cc:  Stephen J. Alexander, Esq.
     Via email to:  salexander@capehart.com

     Rue Insurance
     Via email to: clmail@RueInsurance.com

---

**WARNING**

"Any person who knowingly and with intent to defraud any insurance company files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

Revised 01/2013

# Civil Case Information Statement

**Case Details: CAPE MAY | Civil Part Docket# L-000440-19**

Case Caption: NATIONAL SPECIALTY I NSURANCE  VS
NEW JERSEY AMER

Case Initiation Date: 11/05/2019

Attorney Name: DENISE MARRA DEPEKARY

Firm Name: WEBER GALLAGHER

Address: 1 CROSSROADS DR STE 102A

BEDMINSTER NJ 07921

Phone: 9732421364

Name of Party: PLAINTIFF : National Specialty Insurance

Name of Defendant's Primary Insurance Company
(if known): Unknown

Case Type: OTHER INSURANCE CLAIM (INCLUDING
DECLARATORY JUDGMENT ACTIONS)

Document Type: Complaint

Jury Demand: NONE

Is this a professional malpractice case?  NO

Related cases pending: YES

If yes, list docket numbers: CAM-L-003958-17

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? YES

If yes, is that relationship: Business

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:


Do you or your client need any disability accommodations? NO
    If yes, please identify the requested accommodation:


Will an interpreter be needed? NO
    If yes, for what language:


Please check off each applicable category: Putative Class Action? NO       Title 59? NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/05/2019                                                        /s/ DENISE MARRA DEPEKARY
Dated                                                                                Signed


11/ 5/2019